IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Lina Dou, *et al*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 18-CV-07865 |
| | ) | |
| v. | ) | Judge Charles P. Kocoras |
| | ) | Magistrate Judge Young B. Kim |
| Carillon Tower/ Chicago LP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## JOINT MOTION FOR PRELIMINARY APPROVAL

Plaintiffs Lina Dou, Tingyang Shao, Yixuan Tao, Xiuqin Xing, Emmy Go, Yanming

Wang, Shiyang Xiao, Lihong Zhan, Geli Shi, Ying Yao, (the "Named Plaintiffs"), individually

for themselves and on behalf of all members of the Class, as certified by the Court in its order of

September 11, 2019 (doc. no. 152) (together with the Named Plaintiffs, "Plaintiffs"), and

Defendants Carillon Tower/Chicago LP, Forefront EB-5 Fund (ICT) LLC, Symmetry Property

Development II LLC, and Jeffrey L. Laytin ("Defendants") hereby jointly move for preliminary

approval of a Settlement Agreement they reached in this matter appended hereto as **Exhibit 1**.

Plaintiffs and Defendants are referred to collectively herein as the "Parties."

### I.    Introduction.

This lawsuit is a class action filed on behalf of 88 Chinese nationals who each made a

$500,000 Capital Contribution and paid a $50,000 Administrative Fee to become limited partners

in a development project managed by Defendants known as Carillon Tower.  Plaintiffs' Amended

Complaint alleges claims against the Defendants for violations of the Securities Exchange Act of

1934 (15 U.S.C. 78(j)), violations of the Illinois Securities Act (815 ILCS 5/8 et seq.), Breach of

Contract, Fraud, Breach of Fiduciary Duty, and Appointment of Third-Party Administrator.

On November 5, 2020, the Parties entered into a comprehensive Settlement Agreement to resolve this matter.  It provides that each Plaintiff who does not opt out of the class shall receive a full refund of their Capital Contribution and Administrative Fee ($550,000 per Plaintiff).  After conclusion of a 45-day class notice period, when Defendants know how many Plaintiffs are participating in the class, Defendants shall obtain a credit facility sufficient to fund the settlement and recapitalize the project.  The parties shall then schedule a final approval hearing.  Forty-five days after the Court's order granting final approval, Defendants shall deposit 100% of the settlement funds into escrow with a title insurance company, to be held and disbursed in tandem with the Release Documentation, which is appended hereto as **Exhibit 2**.

As protection and security to the Plaintiffs, the Settlement Agreement is structured so that the money to fund the settlement shall flow directly from the credit facility into the title company escrow utilizing the "earmark doctrine," so that no corporate and/or individual Defendant ever possesses any settlement funds.  The Settlement Agreement also protects Plaintiffs in that, if Defendants fail to fund the escrow according the terms of the Settlement Agreement, Defendants shall be liable for liquidated damages, the parties shall be restored to their litigation position as if the Settlement Agreement never occurred, and Plaintiffs' suit shall proceed accordingly.

For reasons set forth further below, the parties jointly request that the Court enter an order (1) granting this Motion for Preliminary Approval, (2) approving the Notice to Class Members attached hereto as **Exhibit 3**, (3) continuing the stay of these proceedings until the Court renders final approval of the settlement, and the Parties perform the settlement and dismiss the case, and (4) finding that that Glen J. Dunn & Associates and Douglas Litowitz are qualified and competent to serve as Class Counsel, and appointing them as same.

II.    **Factual Background and Procedural History.**

Plaintiffs are 88 Chinese nationals who invested in a real estate development project known as Carillon Tower.  Each plaintiff made a $500,000 Capital Contribution and paid a $50,000 Administrative Fee to become limited partners in the project.  Defendants are the limited partnership entity and developers of parcels of land on the corner of Wabash Avenue and Superior Street in Chicago, Illinois, on which the Carillon Tower project was intended to be developed.

Plaintiffs made their investments in late 2015 or early 2016, with the expectation that development of the project would commence in 2016.  In tandem with their investment, Plaintiffs applied to an immigration program known as EB-5, in which foreign nationals who make job-creating investments in the United States may apply for green cards and emigrate.  However, the project ran into approval delays with the City of Chicago, delays related to historic preservation concerns, and other delays.  To date, Defendants have not begun major construction work.

Plaintiffs' Amended Complaint (ECF #69) pleads claims against Defendants for violations of the Securities Exchange Act of 1934 (15 U.S.C. 78(j)); violations of the Illinois Securities Act (815 ILCS 5/8 et seq.); Breach of Contract; Fraud; Breach of Fiduciary Duty; and Appointment of Third-Party Administrator.  Broadly, Plaintiffs allege that the project failed, and Defendants misappropriated their investment, made misrepresentations, breached duties to Plaintiffs, and breached the limited partnership agreement.  Plaintiffs demand a return of all monies they invested in the project, plus interest and other relief.

Defendants deny liability, contend Plaintiffs' funds have been appropriately invested in the project, and contend that Defendants can obtain approvals and complete development of the project, consistent with their rights under the project documents governing Plaintiffs' investment.

The Parties have conducted substantial motion practice in this matter. Plaintiffs moved for class certification (ECF #67), which the Court granted on September 11, 2019 (ECF #152). Plaintiffs also moved (twice) for a preliminary injunction seeking to freeze defendants' assets (ECF #24, #123, #140), which defendants opposed by filing a record of their development activities (ECF #61, #135, #142). The Court denied the motions to freeze on September 11, 2019 (ECF #123). Defendants moved to dismiss pursuant to Rule 12(b)(6) (ECF #92), which the Court denied on July 12, 2019 (ECF #132). Plaintiffs also made numerous motions for sanctions, contempt, and default, related to performance of a settlement agreement with the initial plaintiff, Annabelle Yao, as well as Defendants' compliance with discovery orders.

The Parties have also conducted substantial discovery, including taking the Rule 30(b)(6) corporate representative deposition of Defendants, conducting an evidentiary contempt hearing before this Court, issuing and answering written discovery, and producing and reviewing thousands of pages of Defendants' banking records and project development documents.

On October 14, 2020, the parties met at the offices of Class Counsel to discuss the resolution of the pending claims and achieve a full refund of the plaintiffs and class members. As a result of these and subsequent negotiations, the parties reached an agreement to resolve this matter, which is attached hereto as **Exhibit 1**. Upon execution, the Settlement Agreement was submitted to the Court *in camera* on November 5, 2020.

### III.    The Settlement.

#### A.    The Settlement Class.

This Court certified a class on September 11, 2019, consisting of "Chinese nationals who are limited partners in the Carillon Tower/Chicago LP and who have each paid $550,000.00 into that partnership." (ECF #152 at p. 3). Two investors, Annabelle Yao and Tu Xiaofeng, entered

into settlement agreements with Defendants prior to class certification, obtained judgments enforcing those settlement agreements, and therefore are not eligible to participate in the class. Three persons who invested in the Carillon Tower project have received denials of their I-526 applications, which means they are entitled to an automatic refund under the project documents.

The "Settlement Class" consists of all other Plaintiffs and members of the certified class who do not timely opt out of the class.  In addition to the Class Notice (**Exhibit 3** hereto, which is subject to Court approval), all the class members shall receive an updated Economic Report describing Defendants' revised development plan for the Carillon Tower project.  Those investors who wish to remain limited partners and investors in the project (thereby remaining eligible to obtain immigration status pursuant to the EB-5 program) must affirmatively opt out of the class.

### B.    The Settlement Monies.

The Settlement Agreement provides that Defendants shall pay a total sum of $550,000.00 per class member who does not opt-out of the class to fund their settlement obligations in this matter and $150,000 of additional attorney's fees ("Settlement Monies").  The aggregate amount of Settlement Monies to be funded will be established in the order granting final approval, once the report of opt-outs has been filed with the Court.

### C.    Notice and Administration of Settlement.

The Court has set a hearing on this Motion for Preliminary Approval on December 3, 2020.  The Settlement Agreement provides that the Settlement Class Notice shall issue to all class members within three (3) calendar days of the entry of the Court's order granting preliminary approval.  Electronic delivery of the Settlement Class Notice shall constitute sufficient notice and delivery.  The Settlement Class Notice shall also be mailed to each class member.  The Settlement Class Notice period shall be 45 days from the date of first mailing of the Settlement Class Notice.

No later than three business days from entry of this Court's order granting preliminary approval, an escrow trust account will be established with a title insurance company. Funds deposited by Defendants into the escrow account shall be held and disbursed in tandem with the executed Release Documents (attached as **Exhibit 2**). The escrow trust account will be locked and only joint signatures from both Defendants and Class Counsel can authorize the dispersal of the monies and items deposited into the escrow trust account.

The Settlement Agreement provides that the parties will seek final approval of the class settlement within 14 days of the last day of the Settlement Class Notice period. Within 45 days of the entry of this Court's order granting final approval of this settlement, Defendants shall deposit 100% of the Settlement Monies into the escrow account by wire transfer. On that same day, the amounts due to each class member who has not opted out and the amounts due Class Counsel will be transferred by wire transfer. Once the electronic receipts proving the foregoing transfers are received, the fully executed Release Documentation will be distributed to the Defendants from the escrow trust account, and Plaintiffs will dismiss their action with prejudice.

### D.    Opt-Outs.

Each Settlement Class Notice shall contain an "Opt-out" form (attached hereto as **Exhibit 4**). A valid and effective Opt-out form must contain the full name, current home (or mailing) address of the class member, must include the statement "I wish to withdraw from the case entitled "Lina Dou, et al. v. Carillon Tower/Chicago LP, et al., N.D.Ill. Case No. 18-cv-7865", or words to that effect, and must be signed by the person requesting to withdraw.

The Settlement Agreement also requires that any class member wishing to opt out must deliver a validly executed Opt-out form to Class Counsel on or before the last day of the Settlement Class Notice Period. The class member must prove timely delivery upon Class

Counsel, not reasonable mailing, to establish receipt. The Settlement Agreement provides that any request to opt out received after the Settlement Class Notice Period will be deemed untimely unless all Parties agree to allow a class member to opt out of the class late. It further provides that any class member contesting the timeliness of their own opt-out must bring their dispute before this Court for hearing within 7 days of the end of the Class Notice Period.

<strong>E.    Liquidated Damages.</strong>

The Settlement Agreement provides that if the Defendants do not fund the escrow trust account by the agreed-upon date reflected in the Court's Order granting final approval, the Defendants shall be jointly and severally liable for liquidated damages for non-performance, subject to a 45-day grace and cure period. The amount of liquidated damages escalates over the grace and cure period, and at the end of the period is fixed at $25,000 for each class member who has not opted out and $250,000 to class counsel. Defendants' liability for liquidated damages shall be secured by personal guarantees from Mr. Jeffrey Laytin and Mr. Jason Ding.

The Settlement Agreement provides that the liquidated damages can never constitute a set-off from any judgment, Order of the Court or collection effort on a judgment in this matter. Further, any payment of liquidated damages to class counsel cannot be used as a credit or offset for any monies due to class counsel or class members under any future settlement, order of the Court and/or judgment. However, the Parties have agreed that the payment of any liquidated damages *can* be used to off-set any future settlement with a class member in this litigation.

<strong>F.    Class Counsel's Application for Fees and Costs.</strong>

Defendants have agreed in the Settlement Agreement that Class Counsel are qualified to represent the class and Defendants do not contest their seeking approval to be confirmed as Class Counsel. Defendants have further agreed that they will not contest Class Counsel seeking

preliminary and final approval of up to 25% of the gross recovery of each class member as costs, expenses, fees, incentive and multiplier under this settlement agreement. The Settlement Agreement does not restrict Class Counsel from seeking more than 25% of the gross recovery of each class member as costs, expenses, fees, incentive and multiplier.

### IV.     Legal Standard for Preliminary Approval of Class Settlement.

A class action may not be dismissed, compromised or settled without the approval of the Court. Fed. R. Civ. P. 23(e). The purpose of the Court's preliminary evaluation of the settlement is to determine whether it is within the "range of reasonableness," and thus whether notice to the class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. *See* 4 Herbert B. Newberg, Newberg on Class Actions § 11.25 et seq., and § 13.64 (4th ed. 2002 and Supp. 2004). Thus, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." Manual for Complex Litigation (Fourth) (Fed. Judicial Center 2004) ("Manual") at § 21.632.

As a general matter, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). To make the preliminary fairness determination, courts consider factors including the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; and the experience and views of counsel. *See*, *e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982).

In considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law, which underlie the merits of the dispute. *See, e.g.*, *West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971); *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement…may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970). Preliminary approval of the settlement should be granted if there are no "reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys." Manual at § 21.632.

### V.      The Settlement Is Fair, Reasonable, and Adequate.

#### A.      The Settlement Provides a Substantial Benefit to the Class.

The Settlement Agreement affords each Plaintiff who does not opt out of the settlement class a full refund of their $500,000 Capital Contribution and $50,000 Administrate Fee that they paid to become limited partners in the Carillon Tower project. Defendants' agreement to a *full* refund of all monies paid by each investor (rather than recovery of just the Capital Contribution) is a substantial concession to Plaintiffs' claims, because the Private Offering Memorandum for the Carillon Tower project stated that the Administrative Fee was non-refundable. While fees awarded to Class Counsel will be deducted from each class member's recovery, the Settlement Agreement nevertheless give settling class members a recovery similar to what they would have received if they prevailed on their claims at trial, yet without the costs and risks of trial.

The Settlement Agreement also offers a substantial benefit to class members because it may offer a better chance of recovering their full investment than prevailing at trial. Defendants

have stated in Court, and have communicated to Class Counsel as well, that the pendency of Plaintiffs' complaint in this matter (which accuses defendants of fraud and breach of fiduciary duty, among other things) makes it difficult for Defendants to come to final terms with a construction lender to deploy the necessary capital to support continued development of the project. By reaching a Court-approved settlement of this matter, Defendants will be able to complete the final terms with a construction lender, which in turn will allow the project to be fully financed. Absent reaching a settlement, even if Plaintiffs were successful in pursuing their claims to a judgment, they might be left with the prospect of trying to collect against parcels of undeveloped land. Unless the project is fully financed, the judgement will be hard to collect.

Finally, the Settlement Agreement also affords a substantial benefit to members of the class who wish to opt *out* of the settlement class, and remain investors in the Carillon Tower project. By providing for resolution and dismissal of the Plaintiffs' complaint, it clears away a major obstacle impeding development of the Carillon Tower project. The settlement increases the likelihood that the project will be able to be fully capitalized as planned, which will allow investors who chose to stay in the project to remain eligible to obtain immigration status.

### B.    Both Sides Face Significant Challenges if the Case Goes Forward.

Class Counsel has devoted significant time to analyzing Defendants' banking and other records produced in the litigation. If the case does not settle, Plaintiffs are expected to file a Second Amended Complaint that brings third parties into the case, in an effort to recover expenditures of Plaintiffs' investment funds that will be challenged by Plaintiffs as improper. This will complicate and prolong the case, and will risk causing further reputational damage to Defendants, making it harder for them to attempt to proceed with development of the project.

At the same time, discovery has persuaded Defendants that class certification is subject to attack, and Plaintiffs' claims are vulnerable to summary judgment. Defendants believe that answers to interrogatories and requests to admit demonstrate that Plaintiffs lack a common pattern of reliance, and the class might therefore be subject to a motion to de-certify. Defendants may argue that Plaintiffs failed to tender evidence that any Plaintiff made a decision to invest based on any misrepresentation by Defendants. Defendants also believe that Plaintiffs' breach of contract claims should be dismissed for lack of any provable damages, because defendants believe that the conditions of the Holdback were ultimately satisfied, regardless of when that occurred.

Both sides also face considerable obstacles in completing fact discovery. The Named Plaintiffs are Chinese nationals, who Class Counsel advised face state-imposed restrictions on their ability to give sworn testimony. The Named Plaintiffs have not produced any documents and may face discovery adversity if the case were to go forward. Defendants, for their part, have been subjected to discovery sanctions and will face continued threats if the case goes forward.

In sum, the path forward for both Parties in litigation, absent Court approval and performance of the Settlement Agreement, is likely to be protracted, expensive and contentious. For these reasons as well, the Parties and their counsel strongly believe that the Settlement Agreement is in their best interests, as compared to the prospect of continuing with the case.

### C.    Judgment of Experienced Counsel is Entitled to Weight.

Based on their experience with similar cases and analysis of the issues raised in this action, the Parties' counsel share the view that the Settlement Agreement is fair and reasonable and in the best interests of the Class. In negotiating the proposed Settlement Agreement, Plaintiffs have had the benefit of highly skilled Class Counsel, with extensive experience in litigating complex

class action litigation.  Defense counsel is likewise experienced the defense of class actions, including shareholder class actions claiming misrepresentations analogous to the present matter.

Because of the detailed legal and actual analysis conducted by counsel for both parties, their endorsement of the Settlement "is entitled to significant weight" in deciding whether to approve the Settlement.  *See*, *e.g.*, *Fisher Bros. v. Cambridge Lee Industries, Inc*., 630 F.Supp. 482, 488 (E.D. Pa. 1985); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal.1980); *Boyd v. Bechtel Corp*., 485 F.Supp. 616-617.  Courts should not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation.  *See, e.g., National Rural Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004).

### D.    Settlement Resulted from Adversarial Arms-Length Negotiations.

Finally, as the Court is aware, this case is nearly two years old, and has been adversarial and hotly contested for that entire time.  Plaintiffs have repeatedly moved for injunctions, contempt, sanctions, and adverse inferences.  Defendants for their part have insisted on the bona fides of their development activities and have made numerous filings to the Court attesting to the same.  Both sides have been aggressive in asserting their respective positions in litigation.

The Parties' settlement efforts have also been contested and adversarial.  On at least three occasions prior to entering into the present Settlement Agreement, the Parties exchanged settlement term sheets, and it appeared the case would settle, only to have negotiations break down and litigation resume anew with vigor.  Class Counsel has been aggressive and effective in seeking a settlement model that would give the class members security against Defendants' potential non-performance.  The present Settlement Agreement vindicates that concern and effort by Class Counsel, in providing for liquidated damages for non-performance, as well as security

for payment of the liquidated damages in the form of personal guarantees. At the same time, the Settlement Agreement affords Defendants what they sought from the negotiations – a full refund for any Chinese investors who wish to withdraw from the Carillon Tower limited partnership, and the security of a liquidated sum and Court-approved settlement. At the simplest level, the Settlement Agreement creates a path that will allow the project to be fully capitalized, and allow the initial project lender (the class members) to be re-financed. It makes excellent practical and business sense, and the Parties are committed to the Settlement Agreement.

**VI.    Conclusion.**

Based on the foregoing and the attachments hereto, the Parties joint and respectfully request that this Court enter an Order: (1) granting this Motion for Preliminary Approval, (2) approving the Notice to Class Members attached hereto as **Exhibit 3**, (3) continuing the stay of these proceedings until the Court renders final approval of the settlement, and the Parties perform and dismiss the case; and (4) finding that that Glen J. Dunn & Associates and Douglas Litowitz are qualified and competent to serve as class counsel, and appointing them as same.

Dated:  December 1, 2020

Respectfully submitted,

/s/ *Glen J. Dunn, Jr.*
Glen J. Dunn, Jr.
Glen J. Dunn & Associates
121 West Wacker Drive
Suite 1414
Chicago, IL 60601
(312) 880-1010

/s/ *Douglas Litowitz*
Douglas Eliot Litowitz
413 Locust Place
Deerfield, IL 60015
(312) 622-2848

COUNSEL FOR PLAINTIFFS

/s/ *Daniel Hildebrand*
Daniel Hildebrand
Greenberg Traurig, LLP
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
(312) 456-8100

COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I, Daniel Hildebrand, certify that on December 1, 2020, a true and correct copy of the foregoing was served electronically through the Northern District of Illinois CM/ECF electronic filing on all counsel of record. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ *Daniel Hildebrand*
Daniel Hildebrand